UNITED STATES of America, Appellee,

v.

John M. CRONIN, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Robert E. STARCK, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Nathaniel M. MENDELL, Defendant, Appellant.

Nos. 92–1790, 92–1791 and 92–1792.

United States Court of Appeals, First Circuit.

Heard Jan. 4, 1993.

Decided March 30, 1993.

Annemarie Hassett with whom Federal Defender Office was on brief for defendant, appellant John M. Cronin.

Richard C. Driscoll, Jr., with whom Driscoll and Mattingly, P.C. was on brief for defendants, appellants Robert E. Starck and Nathaniel M. Mendell.

Mark J. Balthazard, Sp. Asst. U.S. Atty., with whom A. John Pappalardo, U.S. Atty., was on brief, for appellee.

Before BREYER, Chief Judge, ALDRICH, Senior Circuit Judge, and SELYA, Circuit Judge.

BAILEY ALDRICH, Senior Circuit Judge.

Defendants Cronin, Starck and Mendell were variously convicted on some 15 of a 20 count indictment for mail fraud and inducing interstate transportation to obtain property by fraud, 18 U.S.C. §§ 1341 and 2314. Cronin was sentenced as an organizer or leader; Starck and Mendell as managers or supervisors. They appeal, claiming that the evidence did not warrant findings of guilt, or, in any event, justify these added characterizations, and that the orders for restitution were excessive. We affirm, except as to the last.

The fraud involved sales of time shares in a proposed Cape Cod resort, Village Green. Although there were many subsidiary misrepresentations of consequence, the basic ones were that Village Green was a sound long-term investment; that its property, then a motel, would be renovated for the 1989 season; and that it was a member of RCI, Resort Condominium International, Inc. Membership in RCI would permit exchanging time at Village Green for other resorts, and was a most attractive inducement. In point of fact Village Green had no financing even sufficient to get off the ground; initial obligations were not met, and, not long after the start, foreclosure and bankruptcy were not only inevitable, but imminent. Second, with respect to renovation, there was no bona fide prospect of financial ability to accomplish it. Third, the sales pitch was larded with RCI posters; brochures were offered many customers (contrary to RCI's instructions), and the sales agreements recited membership, whereas, in fact, the membership application was never completed, and was rejected. In sum total, some $272,000 was collected of which little was returned, with sales continuing while other protests were ignored.

Each defendant denies guilt, or, at the least, says that the others were more responsible. According to Cronin, "[T]he prosecution's evidence amounted to nothing more than mere association between defendant and the sales people (sic) who made the misrepresentations.... The prosecution presented no substantial evidence that defendant had, or, more importantly, exercised control over the manner in which the time shares were sold ... There was no evidence that defendant read, reviewed, discussed, or otherwise knew the contents of the sales documents ... The evidence was that the salespeople ... not defendant, told prospective purchasers that Village Green was a member of RCI ... These salespeople were under the direct and constant supervision of Hart, the Project Director."

■ In point of fact Cronin was the originator of the development. He had made contact with one Hatfield, who led him to Starck and Mendell to provide financing. The financing was never completed, as he knew, and Hatfield told him it was essential. Cronin obtained a sizeable six month loan at 24% interest annually, subject to

endorsement by Starck and Mendell. He was to receive $400,000 for his contribution to the development, and was said not to share with Starck and Mendell as owners because he had had some difficulty at the Registry of Deeds. He took a note and third mortgage, which, surely, maintained his interest.

As to Cronin's innocence of what was going on, Hart, the Project Director, was partly hired by him, and reported to him. Cronin, in fact, was in charge of marketing, and was said to be present every day. He had been in charge of marketing at an earlier development, and was no amateur. He could not help but see the RCI posters and brochures having, in fact, directed the installation of an RCI room, and he told at least one salesman they were already a member. (Others said he said it was going through as a matter of course, which was equally untrue.) The rosy view painted in his brief is not what we consider. The most that might be said is that the enterprise may have started on good intentions, but when that paving ran out it proceeded on the backs of prone customers.

■ We mention briefly Cronin's objection to testimony that he instructed the contract secretary to place the name Bernard Cohen on the weekly payroll request at $1,500, at the same time telling her that Cohen was a dead friend of his. Cronin asserts this to have been irrelevant and highly prejudicial. Rather, it was highly relevant. In addition to showing that Cronin was improperly milking the scheme, contrary to his denial "that money was paid [him]" (payroll distributions were in cash), it showed the degree to which he was in charge. The court's finding that relevancy prevailed over prejudice was well warranted.

We pause here to say that enough has been shown to justify the court's finding, with reference to sentence, that Cronin was an organizer or leader. U.S.S.G. § 3B1.1(a).

■ Turning to Starck and Mendell, they, as trustees, were the title owners, and had personally endorsed the purchase note. The jury found in their favor on some early counts. They contend, for this and other reasons, that they did not "devise the scheme." Passing the fact that defendants can take no comfort from inconsistent verdicts, *Harris v. Rivera,* 454 U.S. 339, 345, 102 S.Ct. 460, 464, 70 L.Ed.2d 530 (1981), it is not necessary that a defendant be an original organizer. *United States v. Serrano,* 870 F.2d 1, 6 (1st Cir.1989). On the issue of the RCI alone there were ample incidents to warrant conscious deceit. On top of this, these defendants could not have been ignorant of the many financial difficulties that, in due course, presaged ruin.

■ As to the sentencing increase because these defendants were found to be managers or supervisors, U.S.S.G. § 3B1.1(b), Starck and Mendell were, after all, the owners. We review only for clear error, *United States v. Panet–Collazo,* 960 F.2d 256, 261 (1st Cir.), *cert. denied sub nom., Diaz v. United States,* — U.S. —, 113 S.Ct. 220, 121 L.Ed.2d 158 (1992), and we see none. Manifestly they cannot deny responsibility for deliberate misrepresentation by salesmen of which they were aware, even to the point of receiving complaints, simply on the ground that they were not the ones who devised the procedure. This would be a happy day for vendors with loose consciences. The record is replete with misrepresentations, and of defendants', at least occasional, awareness and lack of concern.

With reference to sentences, Starck and Mendell complain that the court charged them with points for obstructing justice by committing perjury. Our prior rejection of this contention, *United States v. Batista–Polanco,* 927 F.2d 14, 21–22 (1st Cir.1991), has since been confirmed. *United States v. Dunnigan,* — U.S. —, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993).

■ Next, defendants complain that their scheme had commenced prior to the Guidelines. As to the prison sentences, they were concurrent, and even though mail fraud counts are separate offenses, *see United States v. Lilly,* 983 F.2d 300 (1st Cir.1992), there can be no possible con-

stitutional question. There is a problem, though, with regard to restitution. Although Starck and Mendell state in their brief that the court ordered restitution for the full amount obtained, this was not so individually. No defendant was convicted on all counts, and as to each defendant the court ordered deducted from the full amount the counts as to which he had been acquitted. This, however, still charged him for more than the counts on which he was convicted—there had been much more collected than was named in the indictment's 20 counts. The government argued that in determining the length of sentence it was proper to look at the entire picture. This is correct, *United States v. Fox,* 889 F.2d 357 (1st Cir.1989); indeed, even to considering offenses found by the court though there had been a jury acquittal. *United States v. Mocciola,* 891 F.2d 13, 17 (1st Cir.1989). This, however, is for enhancement of prison terms within the guidelines. Restitution is a separate matter. 18 U.S.C. § 3663. In *Hughey v. United States,* 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), the defendant, charged, in several counts, with the use of stolen credit cards, pled guilty to the fraudulent use of one. The order for restitution included use of others. The Court reversed, saying the outer limit was "the loss caused by the conduct underlying the offense of conviction." *Id.* at 420, 110 S.Ct. at 1984. This decision, however, did not entirely clear the air, and the circuits have split as to its application in mail fraud cases.

As of the moment, five circuits have answered, or appear disposed to answer, that the "offense of conviction" is the particular mailing charged. *See United States v. Pivorotto,* 986 F.2d 669, 673 n. 5 (3d Cir. 1993); *United States v. Seligsohn,* 981 F.2d 1418, 1421 (3d Cir.1992); *United States v. Jewett,* 978 F.2d 248, 252 (6th Cir.1992); *United States v. Streebing,* 987 F.2d 368, 374–376 (6th Cir.1993); *United States v. Gravatt,* 1991 WL 278979 at *4–*5, 1991 U.S.App. LEXIS 30671, at *10–*14 (6th Cir. Dec. 27, 1991) (*rep'd mem.* 951 F.2d 350); *United States v. Sharp,* 941 F.2d 811, 814–15 (9th Cir.1991); *United States v. Angelica,* 951 F.2d 1007, 1009 (9th Cir.1991); *United States v. Wainwright,* 938 F.2d 1096, 1097–98 (10th Cir. 1991); *United States v. Stone,* 948 F.2d 700, 703–04 (11th Cir.1991); *see also United States v. Marsh,* 932 F.2d 710, 712–13 (8th Cir.1991) (Heaney, J., with the other two judges concurring in the result). Two circuits have, however, answered that the offense includes the scheme as a whole. *See United States v. Stouffer,* 986 F.2d 916, 928 (5th Cir.1993) (Garza, J., with whom Smith, J. concurred; Reavley, J. dissented on this issue); *United States v. Bennett,* 943 F.2d 738, 740 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2970, 119 L.Ed.2d 590 (1992); *United States v. Brothers,* 955 F.2d 493, 497 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 142, 121 L.Ed.2d 94 (1992); *United States v. Langer,* 962 F.2d 592, 600–01 (7th Cir.1992); *United States v. Turino,* 978 F.2d 315, 317–19 (7th Cir.1992).

This is a difficult question, and we well understand the split. Congress, meanwhile, since defendants' offenses, has amended the statute in favor of broad restitution.[1] Under these circumstances we forego total analysis, and for the brief pre-amendment period covered by the present case are content to accept the lenient majority view. The sentence with respect to restitution must be limited to the amounts in the counts on which the particular defendant was found guilty.

*Affirmed, except remanded for correction of orders for restitution in accordance with this opinion.*

---

1. (2) For the purposes of restitution, a victim of an offense that involves as an element a scheme, a conspiracy, or a pattern of criminal activity means any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern. § 3663(a)(2). Added by Pub.L. No. 101–647, § 2509, 104 Stat. 4789, 4863 (Crime Control Act of 1990).