5 F.3d 548
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Elvin Leon HIBBS, Defendant-Appellant.
 No. 92-6308.
 United States Court of Appeals, Tenth Circuit.
 
 Before BRORBY, SETH and HOLLOWAY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 Sept. 15, 1993.
 
 
 2
 Elvin Leon Hibbs was convicted of thirty-eight counts of mail fraud and one count of conspiracy to commit mail fraud. The crimes caused losses of $465,773.15 to the State of Oklahoma, $594,406.68 to Southeastern Foundation, and $90,000.00 to the American Livestock Insurance Company. The indictment specifically charged $459,273.15 in aggregate losses. The exact details of Mr. Hibbs' crimes are immaterial. The district court ordered Mr. Hibbs to pay restitution in the amounts of $40,500 to the State of Oklahoma, $51,700 to Southeastern Foundation, and $7,800 to American Livestock Insurance Company. Mr. Hibbs appeals his sentence. His first claim is that the losses to Southeastern Foundation and American Livestock Insurance Company were not alleged in the indictment against him. This claim is without merit. The contolling statute provides that "[t]he court, in determining whether to order restitution ... shall consider the amount of the loss sustained by any victim as a result of the offense...." 18 U.S.C.A. 3580(a) (1985). Mr. Hibbs' claim lacks merit because the State of Oklahoma, the Southeastern Foundation, and American Livestock Insurance were each victims of the offenses of conviction and the alleged and proven losses greatly exceeded $100,000. In count one of the indictment, Southeastern Foundation is specifically described as a vehicle by which Mr. Hibbs committed fraud and the record clearly establishes that Southeastern Corporation was a victim of the offense. The claim with respect to American Livestock Insurance Company likewise is without merit as the indictment specifically alleges $90,000 in damages to this party as a result of Mr. Hibbs' fraud which were proven at trial. Because the losses sustained by the State of Oklahoma, Southeastern Foundation, and American Livestock Insurance Company alleged in the indictment and proven at trial greatly exceed the order of restitution, Mr. Hibbs' claim is entirely without merit. Mr. Hibbs was ordered to pay $100,000 in restitution and more than $100,000 in losses were charged and proven. The second claim is that Mr. Hibbs lacks the ability to pay the restitution. The district court properly considered Mr. Hibbs' ability to pay and its findings were not clearly erroneous.
 
 
 3
 AFFIRMED.
 
 
 4
 HOLLOWAY, Circuit Judge, concurring in part and dissenting in part:
 
 
 5
 I join the majority in two portions of its holding. However, I respectfully dissent as to the remaining ruling. Like the majority, I would affirm the district court's restitution order to the extent that it requires Mr. Hibbs to pay restitution to the State of Oklahoma and the American Livestock Insurance Company. Unlike the majority, however, I would hold that the order must be vacated insofar as it requires Mr. Hibbs to pay $51,700 in restitution to the Southeastern Foundation.
 
 
 6
 The latter portion of the order is, in my view, inconsistent with Hughey v. United States, 495 U.S. 411 (1990), in which the Supreme Court interpreted the Victim and Witness Protection Act (VWPA), 18 U.S.C. 3579, 3580 (1988), to "make plain Congress' intent to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." 495 U.S. at 413 (emphasis added).[2] In so holding, the Court set aside an order of restitution which required compensation for losses attributable to conduct other than that charged in the count of conviction on his guilty plea. Id. at 413, 422.
 
 
 7
 In this case, the substantive counts of conviction for mail fraud by Mr. Hibbs contain specific allegations of mailings by Mr. Hibbs to the State of Oklahoma and the American Livestock Insurance Company, but none to the Southeastern Foundation. See R. Doc. 392 (Amended Judgment); Indictment, Counts 1-15, 17-34, 36, 38-41. While the introductory sections of the indictment do describe misuse of Southeastern Foundation funds by Mr. Hibbs (R., Indictment, pp. 1, 3), the indictment nowhere alleges any mailings by Mr. Hibbs to the Foundation or by the Foundation to him.[3] It follows that whatever losses the Foundation may have suffered in connection with Mr. Hibbs' overall scheme to defraud, the losses were not "caused by the specific conduct that is the basis of the offense of conviction." Hughey, 495 U.S. at 413. The fact that the overall scheme was an element of Mr. Hibbs' mail fraud offense (see 18 U.S.C. 371, 1341) does not in the view of most circuits make all losses caused by the scheme subject to restitution under the VWPA.
 
 
 8
 I am convinced that we should hold that only losses attributable to specific mailings connected to the scheme to defraud are potentially subject to such restitution. E.g., United States v. Cronin, 990 F.2d 663, 666 (1st Cir.1993) (the majority view is that "the offense of conviction' is the particular mailing charged");[4] United States v. Woods, 986 F.2d 669, 673 (3d Cir.1993) ("we have rejected the argument that there is a unitary scheme' exception to Hughey 's holding") (citing United States v. Seligsohn, 981 F.2d 1418, 1421 (3d Cir.1992)), petition for cert. filed, (June 21, 1993); United States v. Jewett, 978 F.2d 248, 251 (6th Cir.1992) ("the specific conduct that is the basis of the offense of conviction,' Hughey, 495 U.S. at 413, 110 S.Ct. at 1981, can only reasonably refer to the two mailings which serve as the bases for [defendant's] convictions"); United States v. Sharp, 941 F.2d 811, 815 (9th Cir.1991) ("Even when the offense of conviction involves a conspiracy or scheme, restitution must be limited to the loss attributable to the specific conduct underlying the conviction"); United States v. Stone, 948 F.2d 700, 703 (11th Cir.1991) (restitution limited to the particular mailing described in the count of conviction); see also United States v. Milbourn, 948 F.2d 1088, 1089 (8th Cir.1991).[5]
 
 
 9
 Nor does Mr. Hibbs' separate mail fraud conspiracy conviction (R., Indictment, Count 42) provide an independent basis for ordering restitution to the Southeastern Foundation in this case. Admittedly, "[w]hen a defendant is convicted of conspiracy, a district court's restitution award may encompass all losses resulting from the conspiracy" because "the losses caused by the entire conspiracy, not just the losses caused by those acts committed by the defendant, can be attributed to the defendant...." United States v. Brewer, 983 F.2d 181, 184-85 (10th Cir.), cert. denied, 113 S.Ct. 2348 (1993). Nevertheless, under the principles of Hughey, I am convinced that here we cannot uphold the restitution order for repayments to the Southeastern Foundation.
 
 
 10
 Count 42 charges a mail fraud conspiracy between defendant Hibbs and a defendant Kinney "to commit an offense against the United States, in violation of Title 18, United States Code, Sections 371 and 1341." Indictment, Count 42, p. 37. The count does contain allegations about the use of Foundation funds in connection with that conspiracy, including a charge that defendant Hibbs issued a check for $300,000 "from the Foundation account at the Bank of Beaver City and sent it to Bernard I. Parker in Warren, Ohio." 1/27, p. 40. However, even assuming that this involved a mailing of Foundation funds, as the government brief says the Count 42 offense was a horse sale scheme and defendants Hibbs and Kinney "conspired to defraud American Live Stock Insurance Company ... "; using Foundation funds, "defendant financed the sham sale of a race horse ... "; defendant Hibbs provided Foundation money to buy the horse; an ostensible sale for $90,000 was arranged with Foundation funds being transferred to one Parker, who paid Kinney installments on the horse; and defendant Kinney "transmitted the funds back to the Foundation, where they were ultimately redeposited." Brief of Plaintiff-Appellee at 30, 31 (emphasis added). Thus the Foundation was in no way a victim due restitution on the Count 42 conviction.
 
 
 11
 Although I believe the district court's order is inconsistent with the mandate of Hughey to the extent it requires Mr. Hibbs to pay restitution to the Southeastern Foundation, I agree with the majority of the panel as to the remaining portions of the order. Accordingly, I would remand the case with directions to vacate the unauthorized portion of the restitution order, i.e., that for $51,700 of restitution to the Southeastern Foundation, while leaving in place the remaining parts of the order. See United States v. Wainwright, 938 F.2d 1096, 1098-99 (10th Cir.1991) (in VWPA case, illegal portion of sentence may be vacated while leaving in place authorized portion).
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 In relevant part, the VWPA provides that a trial court may order "a defendant convicted of an offense" to "make restitution to any victim of such offense." 18 U.S.C. 3579(a)(1). In so doing, the court must "consider the amount of the loss sustained by any victim as a result of the offense...." 18 U.S.C. 3580(a)
 While Congress amended the VWPA in 1990 to provide that for purposes of restitution, a victim of an offense that "involves as an element a scheme ... means any person directly harmed by the defendant's criminal conduct in the course of the scheme....", 18 U.S.C. 3663(a)(2)(1990), application of the amended provision expanding the restitution liability provisions to conduct that occurred before the 1990 amendment is prohibited by the Ex Post Facto Clause of the Constitution, Art. 1, 9, cl. 3. See, e.g., United States v. Diamond, 969 F.2d 961, 967 n.10 (10th Cir.1992).
 
 
 [3]
 Following trial in this case, Mr. Hibbs stipulated in a Joint Statement Regarding Losses Established at Trial that "there is evidence in the record to support the amount of loss requested [by] the Government[ ] ... ", including the loss to the Southeastern Foundation. R. Doc. 361 at 4. The foregoing stipulation notwithstanding, Mr. Hibbs was neither indicted for, nor convicted of any acts of mail fraud against the Southeastern Foundation
 
 
 [4]
 The government argues that the Southeastern Foundation was named as a victim in the "Parsons Fund Scheme" in Counts 1 through 5 of the indictment. Brief of Plaintiff-Appellee at 40 n.14. Despite such references in the indictment, in none of those or other substantive counts were mailings allegedly made to the Foundation or by it related to the mail fraud offenses
 
 
 [5]
 But see United States v. Stouffer, 986 F.2d 916, 928-29 (5th Cir.1993) ("because the scheme to defraud was specifically defined in the indictment ... we find that the district court's inclusion of all losses caused by the scheme to defraud satisfied Hughey 's requirement that sentencing courts focus upon only the specific conduct underlying the offense of conviction") (emphasis in original), petition for cert. filed, (May 24, 1993); United States v. Bennett, 943 F.2d 738, 741 (7th Cir.1991) ("restitution is permissible for victims of the scheme when the scheme is an element of the offense"), cert.denied, 112 S.Ct. 2970 (1992); see also United States v. Bailey, 975 F.2d 1028, 1033 (4th Cir.1992) ("Hughey should be read narrowly to apply only when the restitution award clearly encompasses ... an offense for which the defendant was not convicted")