USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 96-1110 UNITED STATES OF AMERICA, Appellee, v. SCOTT A. HENSLEY, Defendant, Appellant.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________  ____________________ Before Torruella, Chief Judge, ___________ Cyr and Lynch, Circuit Judges. ______________  ____________________ Miriam Conrad, with whom Federal Defender Office was on brief for _____________ _______________________ appellant. Annette Forde, Assistant United States Attorney, with whom Donald _____________ ______ K. Stern, United States Attorney, was on brief for appellee. ________  ____________________ August 5, 1996  ____________________ CYR, Circuit Judge. Defendant Scott Allen Hensley CYR, Circuit Judge ______________ challenges the restitutionary sentence imposed upon him by the district court, thus presenting this court with its first occa- sion to interpret and apply the 1990 amendments to the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. 3663-64 (1994). Finding no error, we affirm the district court judgment.  I I BACKGROUND BACKGROUND __________ After a federal grand jury indicted him for, among other things, devising and executing a scheme to obtain merchan- dise under false pretenses from various computer-products dis- tributors across the country, Hensley pled guilty to all counts, thereby conceding the following facts as alleged in the indict- ment.1  On April 1, 1995, under the alias "Robert Halford," Hensley rented a box at Mail Boxes, Etc. ("MBE"), 510 Common- wealth Avenue, Boston, Massachusetts. On April 14, he telephoned companies in California, New York, Texas, and New Jersey, and using the name "Halford," placed orders for computer equipment in behalf of a fictitious company, American Telemark, purportedly a division of AT&T, for delivery to the MBE address in Boston. Hensley remitted five forged checks via Federal Express, in  ____________________ 1The charges included mail fraud, 18 U.S.C. 1341 (1994); wire fraud, id. 1343; making or possessing counterfeit securi- ___ ties, id. 513; interstate transportation of counterfeit securi- ___ ties, id. 2314; and receipt of stolen goods transported in ___ interstate commerce, id. 2315.  ___ 2 amounts ranging from $20,000 to $31,000 and bearing the AT&T logo. Once the computer equipment arrived, Hensley used the alias "William Noonan" to rent storage space and a U-Haul truck to transport the equipment. On his next visit to the MBE, Hensley was arrested by the FBI.  After Hensley pled guilty and before sentencing, the government learned that he had committed additional fraudulent acts during the same time period. According to the undisputed __________ facts set forth in the presentence report ("PSR"), see United ___ ______ States v. Benjamin, 30 F.3d 196, 197 (1st Cir. 1994) (failing to ______ ________ object bars appellate challenge to facts stated in PSR), on March 30, 1995, Hensley had used the "William Noonan" alias to rent a second box at another MBE location, on Newbury Street in Boston. On April 3, "Noonan" placed an $837.86 telephone order for computer software with Creative Computers, a California company, for delivery to the Newbury Street MBE. He tendered a counter- feit money order drawn on a Boston Check Cashiers ("BCC") company account, which was dishonored after he absconded with the Cre- ative Computers software. Hensley issued three more counterfeit BCC money orders in payment for another computer order placed with ATS Technologies ("ATS"), a credit card bill, and a car rental. Although the charged conduct resulted in no actual losses because the equipment was recovered, the PSR recommended that Hensley reimburse the car rental company ($500.00), the credit card company ($725.00), Creative Computers ($837.86), and 3 ATS ($1,026.12), each of which had accepted a counterfeit BCC money order. Hensley objected that the four companies were not victims of the offense of conviction as the indictment did not charge him with passing the counterfeit money orders. Following briefing and oral argument, the district court found that ATS had sustained no loss, and that neither the credit card bill nor the car rental came within the scope of the offense of conviction. The court nonetheless ruled that the Creative Computers acquisi- tion was within the alleged scheme to defraud. The court accord- ingly directed Hensley to make restitution to Creative Computers, and Hensley appealed.  II II DISCUSSION DISCUSSION __________ Federal courts possess no inherent authority to order restitution, and may do so only as explicitly empowered by stat- ute. United States v. Gilberg, 75 F.3d 15, 22 (1st Cir. 1996). _____________ _______ The VWPA authorizes restitutionary sentences by the district courts for the benefit of victims of federal offenses. As Hensley's criminal conduct and conviction occurred after November 29, 1990, the effective date of the Crime Control Act of 1990, the 1990 VWPA amendments govern our decision.2  The VWPA provides that "[t]he court . . . may order . . . restitution to any victim of such offense." 18 U.S.C.  ___ ______ __ ____ _______  ____________________ 2Gilberg, 75 F.3d at 20-22. Moreover, the Sentencing Guide- _______ lines do not purport to expand the sentencing court's authority to order restitution. U.S.S.G. 5E1.1(a)(1) (1995) (incorporat- ing the VWPA).  4 3663(a)(1) (emphasis added). Prior to the 1990 amendments, the VWPA had been interpreted by the Supreme Court as limiting resti- tution to the "loss caused by the specific conduct that [was] the ________ _______ basis of the offense of conviction." Hughey v. United States, ______ _____________ 495 U.S. 411, 413 (1990) (emphasis added). The Hughey Court ______ therefore reversed a restitutionary sentence which had been based on the total loss attributable to all counts in an indictment ___ charging unauthorized use of credit cards and theft by a Postal Service employee, rather than on the loss attributable to the one count to which Hughey had pled guilty. Id. at 422. ___ After Hughey, this court held that the specific conduct ______ ________ _______ underlying a mail fraud conviction, which requires proof of a broader scheme to defraud, includes only the particular mailing charged and not the entire mail fraud scheme. United States v. _____________ Cronin, 990 F.2d 663, 666 (1st Cir. 1993); accord United States ______ ______ _____________ v. Newman, 49 F.3d 1, 11 (1st Cir. 1995) (wire fraud). Thus, we ______ adopted the more narrow and lenient majority view during the interim preceding the 1990 amendments to the VWPA. Cronin, 990 ______ F.2d at 666.  The present controversy requires us to reexamine Cronin ______ in light of the 1990 amendments. Consistent with the minority view we rejected in Cronin, in 1990 Congress amended the VWPA to ______ provide that "a victim of an offense that involves as an element _ ______ __ __ _______ ____ ________ __ __ _______ a scheme, a conspiracy, or a pattern of criminal activity means _ ______ _____ any person directly harmed by the defendant's criminal conduct in ___ ______ ________ ______ __ ___ ___________ ________ _______ __ the course of the scheme, conspiracy, or pattern." 18 U.S.C.  ___ ______ __ ___ ______ 5 3663(a)(2) (emphasis added). As Hensley concedes that a scheme to defraud is an element of the mail and wire fraud offenses to which he pled guilty, see United States v. Sawyer, 85 F.3d 713, ___ ______ ______ ______ 723 (1st Cir. 1996), the district court correctly applied VWPA  3663(a)(2) in this case. Compare United States v. Reed, 80 F.3d _______ ______________ ____ 1419, 1423 (9th Cir. 1996) ("felon in possession" offense does not require proof of scheme). Under current VWPA 3663(a)(2), the district court may order restitution to every victim directly harmed by the defendant's conduct "in the course of the scheme, conspiracy, or pattern of criminal activity" that is an element of the offense of conviction, without regard to whether the particular criminal __________ ________ conduct of the defendant which directly harmed the victim was _______ alleged in a count to which the defendant pled guilty, or was even charged in the indictment. United States v. Henoud, 81 F.3d _____________ ______ 484, 488 (4th Cir. 1996) (unnamed victim); United States v. ______________ Kones, 77 F.3d 66, 70 (3d Cir. 1996) (providing example); United _____ ______ States v. Pepper, 51 F.3d 469, 473 (5th Cir. 1995). Thus, the ______ ______ outer limits of a VWPA 3663(a)(2) restitution order encompass all direct harm from the criminal conduct of the defendant which was within any scheme, conspiracy, or pattern of activity that was an element of any offense of conviction. See Kones, 77 F.3d ___ _____ at 70 (discussing causation requirement).  Although Hensley acknowledges the expansiveness of the 1990 amendments, he contends that the fraudulent order placed with Creative Computers was not within the same scheme embraced 6 by the offense to which he pled guilty. We approach this claim by examining the terms of the indictment and the plea agreement. Henoud, 81 F.3d at 488. For the most part, courts require that ______ the indictment "specifically" define the scheme in order to ensure that the restitutionary amount not exceed the harm direct- ly caused the victim of the scheme embraced by the offense of conviction, id.; see also United States v. Bennett, 943 F.2d 738, ___ ___ ____ _____________ _______ 741 (7th Cir. 1991) (noting amorphous nature of "scheme" con- cept), cert. denied, 504 U.S. 987 (1992). Nevertheless, the _____ ______ courts of appeals consistently have upheld restitutionary sen- tences based simply on evidence sufficient to enable the sentenc- ing court to demarcate the scheme, including its "mechanics . . .[,] the location of the operation, the duration of the criminal activity, [and] the methods used" to effect it. Henoud, 81 F.3d ______ at 489-90 n.11; Pepper, 51 F.3d at 473; United States v. Turino, ______ _____________ ______ 978 F.2d 315, 318-19 (7th Cir. 1992) (collecting cases), cert. _____ denied, 508 U.S. 975 (1993). Hensley concedes that the ______ indictment adequately defined the scheme, but faults the district court for focusing on the broad "boilerplate" language in the indictment, rather than the specific conduct alleged. We think the 1990 amendments to the VWPA and the relevant caselaw, see, ___ e.g., Turino, 978 F.2d at 318-19 (discussing Seventh Circuit ____ ______ cases), preclude so narrow a definition of the "scheme" element, which amounts to an attempt to revive the Hughey holding discard- ______ ed by Congress in the 1990 VWPA amendments. See supra pp. 4-5.  ___ _____ Hensley pled guilty to an indictment alleging that he 7 devised and executed a scheme in Boston to obtain merchandise by false pretenses from specific computer-products distributors around the country, which extended roughly from April 1 to April 25, 1995. Thus, the indictment adequately detailed the offense of conviction, as well as the underlying scheme to defraud, so as to enable the district court reliably to fashion a restitutionary sentence which fairly reimbursed any victim directly harmed by Hensley's criminal conduct during the course of the scheme involved in the offense of conviction.  As a fallback position, Hensley claims that the Cre- ative Computers software purchase was not part of the scheme underlying the offense of conviction, even under the broad definition we now adopt. Restitution orders normally are re- viewed only for "abuse of discretion," Gilberg, 75 F.3d at 20, _______ and their subsidiary factual findings only for "clear error." United States v. Savoie, 985 F.2d 612, 617 (1st Cir. 1993) ______________ ______ (victim loss); United States v. Sarno, 73 F.3d 1470, 1503 (9th _____________ _____ Cir. 1995), cert. denied, 116 S. Ct. 2553 (1996), and petition _____ ______ ___ ________ for cert. filed, U.S.L.W. , (U.S. June 27, 1996) (No. 95- ___ _____ _____ __ ___ 9478). At the outset, we note that the cases on restitutionary sentences cast little light on how the sentencing court is to determine whether a criminal defendant's conduct was part of a unitary scheme. However, we agree with the government's sugges- tion, to which Hensley takes no exception, that it is useful to consult the analogous caselaw on duplicitous indictments and 8 variance of proof. See, e.g., United States v. Morse, 785 F.2d ___ ____ _____________ _____ 771, 774-75 (9th Cir.) (mail fraud), cert. denied, 476 U.S. 1186 _____ ______ (1986). Thus, in determining whether particular criminal conduct comprised part of a unitary scheme to defraud, the sentencing court should consider the totality of the circumstances, includ- ing the nature of the scheme, the identity of its participants and victims, and any commonality in timing, goals, and modus operandi. Id. Accord United States v. Morrow, 39 F.3d 1228, ___ ______ _____________ ______ 1233-34 (1st Cir. 1994) (conspiracy), cert. denied, 115 S. Ct. _____ ______ 1328 (1995).3  We do not agree that there were too many differences between the fraudulent acquisition from Creative Computers and the conduct alleged in the indictment to permit the district court to rule that the former acquisition came within any alleged unitary scheme to defraud. The undisputed evidence plainly supported the district court finding that Hensley launched the unitary scheme with the Creative Computers purchase, by renting the two drop boxes at MBE locations in Boston within two days of  ____________________ 3We reject the assertion by Hensley that this interpretation permits restitution for "any loss caused by defendant's fraudu- lent conduct, no matter how unrelated to the specific scheme at issue." The district court finding that the counterfeit money orders Hensley used to "pay" a credit card bill and a car rental bill were not part of the scheme underlying the offense of conviction illustrates the limits upon a sentencing court's authority to order restitution under the 1990 VWPA amendments. Moreover, the criteria we endorse for determining whether various conduct comprised a single scheme serves as a guide to both the initial restitutionary sentencing decision and appellate review, and, in keeping with the amendatory statute, allows the sentenc- ing court substantial, though not unbridled, discretion to reimburse crime victims.  9 one another, placing all the fraudulent orders for goods with computer-products suppliers (similar victims) within less than two weeks, using interstate wires in each instance, and "paying" for the goods with counterfeit instruments. This abundance of proof on the commonality of the victims, timing, and modus operandi utterly precludes a finding of clear error. See Savoie, ___ ______ 985 F.2d at 617.  III III CONCLUSION CONCLUSION __________ As the district court correctly concluded that Creative Computers was a victim of the offense of conviction for purposes of the restitution statute, its $837.86 restitutionary sentence must be affirmed.  AFFIRMED. AFFIRMED ________ 10