**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jon R. GUTHRIE, a/k/a Jay Roland,**
**Defendant–Appellant.**

**No. 94–4171.**

United States Court of Appeals,
Tenth Circuit.

Sept. 11, 1995.

---

Scott M. Matheson, Jr., United States Attorney, Stanley H. Olsen, Assistant United States Attorney, Office of United States Attorney, Salt Lake City, UT, for plaintiff-appellee.

Walter F. Bugden, Bugden & Morton, Salt Lake City, UT, for defendant-appellant.

Before SEYMOUR, Chief Judge, McKAY and HENRY, Circuit Judges.*

HENRY, Circuit Judge.

Jon R. Guthrie appeals the district court's order denying his motion to withdraw his guilty plea, as well as the district court's restitution order entered against him in the amount of $27,600. Although we affirm the

---

* The parties agreed to submit this case on the briefs. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument

district court's denial of Mr. Guthrie's motion to withdraw his guilty plea, for the reasons stated below we vacate the district court's restitution order and remand the case for resentencing.

## BACKGROUND

In October of 1992, Mr. Guthrie was named in four counts of an indictment in the District of Utah, which charged him with, inter alia, providing prohibited kickbacks from the proceeds of a government contract in violation of 41 U.S.C. § 53. Specifically, the indictment alleged that Mr. Guthrie had entered into a contract with Gregory Frazier to provide certain services in fulfillment of Mr. Frazier's contractual obligations with the United States Department of Labor, and then paid $10,000 of the $24,000 contract price to Mr. Frazier as a kickback.

In September of 1993, Mr. Guthrie's attorney began discussing the possibility of a plea agreement with the government. At a subsequent district court hearing, Mr. Guthrie testified that during these plea negotiations he was suffering from a large tumor in his sinus cavity, which was scheduled to be removed at a hospital in Pennsylvania. However, before having the tumor removed, Mr. Guthrie travelled to Utah, on the advice of his attorney, in order to negotiate a plea agreement. Mr. Guthrie also testified that at this time he was taking medication for clinical depression, but that he forgot to bring that medication with him to Utah.

Mr. Guthrie arrived in Utah on Friday, September 24, 1993. He discussed the possibility of entering a guilty plea with his attorney on Saturday and with the prosecutor on Sunday. During these discussions, Mr. Guthrie's attorney made it clear that the decision was ultimately up to Mr. Guthrie and "that he [wa]s not there to recommend but simply to present the offer and [Mr. Guthrie] ha[d] to decide what ... to do." Rec. vol. II, at 17.

On Monday, September 27, 1993, the district court held a hearing to consider a change of Mr. Guthrie's plea from not guilty to guilty. At the hearing, Mr. Guthrie answered all of the district court's questions without hesitation and appeared to be coherent and acting on his own volition. Mr. Guthrie stated that he was not under the influence of any medications, that he was acting voluntarily, that he had not been pressured or coerced into changing his plea, and that he was satisfied with his attorney. Additionally, the court explained the charges and possible penalties to him, as well as the various constitutional rights Mr. Guthrie would waive by entry of a guilty plea. The court also noted that the maximum term of imprisonment would be ten years. Following this inquiry, the district court accepted Mr. Guthrie's plea of guilty to one count of the indictment. The remaining counts of the indictment against Mr. Guthrie were dropped.

On January 24, 1994—almost four months later—Mr. Guthrie moved to withdraw his guilty plea. The district court held a hearing and received the testimony of Mr. Guthrie and of an attorney, Mr. Warlaumont, who spoke to Mr. Guthrie shortly after entry of the guilty plea. During Mr. Guthrie's testimony, he was asked whether his mental capacity during entry of the guilty plea was impaired by his health condition. Mr. Guthrie responded: "Absolutely. I would never today, I would never even consider accepting such a plea bargain." Rec. vol. II, at 23. He also stated that he had not read the Statement by Defendant in Advance of Plea of Guilty, even though he had signed it and had previously told the court under oath that he had read the statement. Mr. Guthrie also testified at this hearing that he had understood the seriousness of the offense prior to entry of his plea, *id.* at 35–36; that he had "absolutely" understood the impact of not taking his antidepressants but failed to inform the court, *id.* at 40; and that he had understood that the decision of whether to enter the plea was his choice, *id.* at 42. Mr. Guthrie also told the court that "[i]t was certainly a voluntary plea." *Id.* at 38.

Mr. Warlaumont testified that Mr. Guthrie had come to speak to him just days after entry of his guilty plea to discuss whether he had made the right decision. Mr. Warlaumont stated that Mr. Guthrie had expressed concern about having pled guilty and had

been specifically concerned that his trial counsel had not devoted adequate time to the case. Mr. Warlaumont could not recall Mr. Guthrie having expressed any concerns to him regarding his medical condition.

After consideration of this testimony, the district court expressed its satisfaction with the knowing and intelligent nature of Mr. Guthrie's guilty plea:

> I observed this defendant and I was satisfied in every way that he was acting wholly, voluntarily and of his own free will and choice and intelligence and without hesitation and without reservation and there was nothing in his demeanor or in anything he said that made me think that there was any question about his decision to plead guilty.

> If there was some kind of subjective, unstated reason as now is being suggested, it certainly wasn't apparent to the court and it isn't apparent from the transcript. I'm satisfied that he was acting voluntarily, under no pressure, that he understood the charges, the word kickback was used many times during the course of the transcript.

*Id.* at 71. The court also noted that Mr. Guthrie had not mentioned any medical concerns when speaking to Mr. Warlaumont about the plea just days later. The court concluded: "[T]here is no compelling reason that convinces the court that I should permit this defendant to withdraw his plea and the motion to withdraw is denied." *Id.* at 72.

The district court subsequently sentenced Mr. Guthrie to five years probation, including six months home confinement and 250 hours of community service as conditions of that probation, $27,600.00 in restitution, and a $50.00 special assessment. Mr. Guthrie now appeals the denial of his motion to withdraw his guilty plea, as well as the district court's order imposing restitution.

## DISCUSSION

### *Withdrawal of Guilty Plea*

Mr. Guthrie first argues that the district court abused its discretion by denying his motion to withdraw his guilty plea. Fed. R.Crim.P. 32(e) reads: "If a motion to withdraw a plea of guilty or nolo contendere is

made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason." *Id.* (formerly Fed.R.Crim.P. 32(d)). However, "One who enters a guilty plea has no right to withdraw it." *Barker v. United States,* 579 F.2d 1219, 1223 (10th Cir.1978). Under Rule 32(e), the defendant has the burden of establishing a "fair and just" reason for allowing withdrawal of the plea, and " '[i]t is within the sound discretion of the [district] court to determine what circumstances justify granting such a motion.' " *United States v. Gordon,* 4 F.3d 1567, 1572 (10th Cir.1993) (quoting *United States v. Wade,* 940 F.2d 1375, 1377 (10th Cir.1991)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1236, 127 L.Ed.2d 579 (1994) (second alteration in original). We therefore review the district court's denial of Mr. Guthrie's motion for an abuse of discretion and we will not reverse absent a showing that the district court acted unjustly or unfairly. *See id.* at 1572–73.

This court has adopted seven factors to consider when determining whether the defendant has established a fair and just reason for allowing withdrawal of a guilty plea: (1) assertion of innocence by the defendant; (2) prejudice to the government if the motion is granted; (3) whether the defendant has delayed filing the motion to withdraw his plea; (4) inconvenience to the court if the motion is granted; (5) quality of defendant's assistance of counsel during his plea; (6) whether the plea was knowing and voluntary; and (7) waste of judicial resources. *Gordon,* 4 F.3d at 1572. Mr. Guthrie only raises three of these factors on appeal: he asserts his innocence, arguing that he did not understand the meaning of the word "kickback" when he entered his guilty plea; he argues that although he waited four months to file a formal motion to withdraw his plea, he actually began taking steps toward that end the day after he entered his plea; and he urges that any prejudice to the government is outweighed by his interest in having a jury trial.

We are not persuaded that Mr. Guthrie has met his burden of showing that the district court acted unjustly or unfairly in denying his motion to withdraw his guilty plea. Initially we note that the district court

described the factual basis for the plea in detail and used the word "kickback" throughout the proceeding. Mr. Guthrie also admitted that he had been aware of the serious nature of the offense, and that his plea had in fact been voluntary. Mr. Guthrie also waited almost four months before filing his motion to withdraw his plea, and we do not believe that his intention to do so earlier is relevant—a defendant must still follow proper procedures. Given these factors, we can not agree that the prejudice to the government is outweighed by Mr. Guthrie's purported right to withdraw his plea.

After thoroughly reviewing the record in this case, it is clear that the only argument Mr. Guthrie made to the district court was that had his personal circumstances been different, he would not have pled guilty. He did not then, nor does he now, allege that his medical condition affected him in such a way that his plea was rendered involuntary or that he did not understand the nature of his plea or the charges against him. We therefore believe that the record amply supports the district court's denial of his motion, and we find no abuse of discretion.

### Order of Restitution

■ Mr. Guthrie also appeals the district court's order of restitution in the amount of $27,600. Mr. Guthrie argues that he performed the services required of him under the terms of the contract with Mr. Frazier and that the value of his services should therefore partially offset the amount of restitution. Mr. Guthrie makes no other arguments with regard to the restitution order on appeal. However, "[t]he imposition of an illegal restitution order ... constitutes plain error," *United States v. Herndon,* 982 F.2d 1411, 1420 (10th Cir.1992), and "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court," Fed. R.Crim.P. 52(b). Although a restitution order that falls within the limits of the Victim and Witness Protection Act (VWPA), 18 U.S.C. §§ 3663–3664, is reviewed only for an abuse of discretion, *United States v. Harris,* 7 F.3d 1537, 1539 (10th Cir.1993), we review the legality of the district court's order of

restitution de novo, and the district court's underlying factual findings will only be disturbed if they are clearly erroneous. *Herndon,* 982 F.2d at 1420.

■ The district court in this case adopted the presentence report recommendation and ordered restitution pursuant to the VWPA. The general provision of the VWPA provides: "The court, when sentencing a defendant convicted of an offense under [title 18] or section 46312, 46502, or 46504 of title 49, may order, in addition to ... any other penalty authorized by law, that the defendant make restitution to any victim of such offense." 18 U.S.C. § 3663(a)(1). The VWPA therefore generally allows a separate order of restitution "only when the defendant's offense is an offense under either Title 18 or Title 49." *United States v. Stout,* 32 F.3d 901, 905 (5th Cir.1994).

■ Mr. Guthrie was convicted of an offense under Title 41, which does not fall within the general purview of § 3663(a). However, Congress amended the VWPA in 1990 and added the following subsection: "The court may *also* order restitution in *any criminal case* to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3) (emphasis added). The Ninth Circuit has held that Subsection (a)(3) encompasses offenses under any title of the United States Code. *See United States v. Soderling,* 970 F.2d 529, 534 (9th Cir.1992) (per curiam), *cert. denied,* —— U.S. ——, 113 S.Ct. 2446, 124 L.Ed.2d 663 (1993). We agree. Congress was very specific when it stated that Subsection (a)(1) applied to "offense[s] under this title or section 46312, 46502, or 46504 of title 49." 18 U.S.C. § 3663(a)(1). It placed no such limitations on the application of Subsection (a)(3). Therefore, we hold that the district court in this case could properly order Mr. Guthrie to pay restitution under this section "to the extent agreed to by the parties in [the] plea agreement." 18 U.S.C. § 3663(a)(3).

■ Mr. Guthrie's "Statement By Defendant in Advance of Plea of Guilty" referred to restitution as follows:

I understand that the Court may order that restitution be paid *to any victim of*

*the offense(s) to which I am pleading guilty.* I agree to enter, at the time of sentencing, a consent to judgment in the amount of restitution ordered.

Rec. vol. I, doc. 89, at 2 (emphasis added). It is apparent from this language that Mr. Guthrie did not agree to pay restitution for losses stemming from counts of the indictment that were dismissed.[1] However, it appears that the court's restitution order accounted for losses other than those arising out of the count of conviction.

The district court did not explain how it arrived at the $27,600 restitution figure, and the presentence report—upon which the district court apparently relied—merely states that this is the amount of money that actually came into Mr. Guthrie's possession. However, Mr. Guthrie stipulated in his plea agreement that the total amount of loss incurred because of his actions was $38,400. This figure represented $24,000 from the crime of conviction, in addition to $14,400 allegedly paid to Mr. Guthrie for the lease of certain real estate. The $14,400 payment was the basis of another count in the indictment under 18 U.S.C. § 666 (Misapplication of Government Funds). Although this count was dismissed pursuant to the plea agreement, the government appended a "Stipulation of Facts" to Mr. Guthrie's statement in advance of his plea. The stipulation detailed the amounts of money involved in the counts for which Mr. Guthrie was indicted:

1. On or about October 18, 1988, Jon Gutherie [sic] and W. Frazier entered into a contract. As a condition of this contract, Gutherie agreed to pay and did pay a kickback to Gregory Frazier, which kickback Frazier accepted. The amount of the contract was $24,000. The amount of the kickback was $10,000.

2. On or about November 16, 1988, Jon Gutherie received the sum of $14,400 less

$800 real estate brokerage commission from United Tribes Service Center as payment for a lease. This payment was a misapplication of government funds.

Rec. vol. I, doc. 89, at 8. From this stipulation, it appears that the district court arrived at the amount of restitution ($27,600) by taking the amount paid to Mr. Guthrie under the government contract ($24,000) minus the amount of the kickback Mr. Guthrie paid to Mr. Frazier ($10,000) plus the amount Mr. Guthrie allegedly received as payment for the lease ($14,400) minus the real estate brokerage commission ($800).

It is evident from Mr. Guthrie's statement in advance of his plea and from the district court's judgment that Mr. Guthrie did not plead guilty to misapplication of government funds under 18 U.S.C. § 666. The payment of restitution for counts of the indictment to which Mr. Guthrie did not plead guilty was clearly not part of the bargain envisioned by the parties under the plea agreement. Because under § 3663(a)(3) of the VWPA the district court can only order restitution to the extent agreed upon in the plea agreement, the district court erred to the extent it ordered restitution of the $14,400 (or $13,600 if the court did indeed include the $14,400 minus $800 as we suspect it did) for the count of the indictment that was dismissed.

With regard to Mr. Guthrie's argument that he is entitled to offset the amount of restitution by the value of the services he allegedly performed under the government contract, we note that he did agree to pay restitution "to any victim of the offense(s) to which [he was] pleading guilty." Rec. vol. I, doc. 89, at 2. Thus, the district court was authorized under 18 U.S.C. § 3663(a)(3) to order restitution for the crime of conviction. Because Mr. Guthrie did not stipulate the amount of restitution to be made under the plea agreement,[2] the district court was re-

---

1. In *United States v. Thompson,* 39 F.3d 1103, 1105 (10th Cir.1994), we held that under § 3663(a)(3) a defendant may agree to pay restitution for losses flowing from the counts of the indictment that were dismissed. However, the government failed to specify an intent to do so in this case, and Mr. Guthrie clearly agreed to pay restitution only for losses stemming from the crime of conviction.

2. While the plea agreement stated that the total amount of loss occasioned by Mr. Guthrie's conduct was $38,400, the district court used this figure to determine Mr. Guthrie's base offense level under the United States Sentencing Guidelines, and did not rely on this figure to determine the amount of restitution. The plea agreement also does not mention this figure with regard to the payment of restitution.

quired to determine the appropriate amount in accordance with the provisions of 18 U.S.C. § 3664. Under § 3664(d), "The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government."

The government in this case relied upon the presentence report with regard to the amount of restitution. *See* Rec. supp. vol. I (Position of the United States with Respect to Sentencing Factors). The presentence report stated that "[t]he defendant personally received funds in the amount of $27,600, which is owed as restitution in this case." Rec. vol. IV, at 17. The district court based its order of restitution on this finding, and did not respond to Mr. Guthrie's allegation that he was entitled to have the amount of restitution offset by the value of the services he allegedly performed under the government contract.

▅▅▅▅ We believe the district court applied the wrong standard for determining the amount of restitution in this case. The proper inquiry under the VWPA should be "the amount of loss sustained by [the] victim," 18 U.S.C. § 3664(a), not the amount received by the defendant. The district court therefore erred by ordering restitution without determining the losses sustained by the victim.

Additionally, Mr. Guthrie is correct that the determination of the amount of loss must account for any benefit received by the victim. *See* 18 U.S.C. § 3663(e)(1) ("The court shall not impose restitution with respect to a loss for which the victim has received or is to receive compensation...."); 18 U.S.C. § 3663(b)(1)(B)(ii) ("The order may require that such defendant ... pay an amount equal to ... the value of the property on the date of sentencing, *less the value ... of any part of the property that is returned.*") (emphasis added); *see also Harris,* 7 F.3d at 1539 ("A sentencing court may not order restitution under the VWPA in an amount greater than the total loss caused by a defendant's conduct."); *United States v. Oren,* 893 F.2d 1057, 1066 (9th Cir.1990) (holding that the district court was required to offset the value of the benefit received by the victim from the defendant). Mr. Guthrie is therefore entitled to have the amount of restitution offset by the value of the services he performed under the government contract, if any.

To summarize, because the district court failed to determine the amount of loss to the victim—taking into account the value of any services actually provided by Mr. Guthrie under the government contract—and because the district court apparently included in the amount of restitution losses stemming from counts of the indictment to which Mr. Guthrie did not plead guilty, the district court misapplied the relevant law in determining the appropriate amount of restitution.

We accordingly VACATE the district court's order of restitution and REMAND for resentencing in accordance with this opinion. We AFFIRM the judgment and sentence of the district court in all other respects.