103 F.3d 145
 96 CJ C.A.R. 2031
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Johnnie Louis McALPINE, also known as Louie McAlpine,
Defendant-Appellant.
 No. 95-3177
 D.C. No. 92-10009-01
 United States Court of Appeals, Tenth Circuit.
 Dec. 9, 1996.
 
 Before KELLY, LOGAN and BRISCOE, Circuit Judges.
 
 
 1
 ORDER AND JUDGMENT*
 
 
 2
 Defendant Johnnie Louis McAlpine pleaded guilty to eight counts of mail fraud, in violation of 18 U.S.C. § 1341, and was sentenced to forty-six months imprisonment and ordered to pay $1,403,451 in restitution. In defendant's first appeal, in which he challenged only his sentence, we affirmed in all respects except that we vacated the restitution order and remanded the case for the court to make specific factual findings in recomputing the restitution amount. United States v. McAlpine, 32 F.3d 484, 490-91 (10th Cir.), cert. denied, 115 S.Ct. 610 (1994). On remand, the district court entered a new order in which it recalculated the amount of restitution as $798,056 related to four of the counts. Defendant again appeals the amount of restitution ordered.
 
 
 3
 "Although a restitution order that falls within the limits of the Victim and Witness Protection Act (VWPA), 18 U.S.C. §§ 3663-3664, is reviewed only for an abuse of discretion, United States v. Harris, 7 F.3d 1537, 1539 (10th Cir.1993), we review the legality of the district court's order of restitution de novo, and the district court's underlying factual findings will only be disturbed if they are clearly erroneous." United States v. Guthrie, 64 F.3d 1510, 1514 (10th Cir.1995). On appeal, defendant challenges the district court's restitution order on three grounds: (1) the conduct for which defendant was ordered to pay restitution exceeds the specific conduct underlying the counts of conviction; (2) the amount of restitution ordered does not consider the value of property returned to victims; and (3) the court failed to set forth its factual basis for finding that defendant possesses the assets or earning potential to pay restitution.
 
 
 4
 * Defendant was indicted on twenty-six counts of mail fraud. A mail fraud conviction requires proof of a scheme to defraud and use of the mails for the purpose of executing that scheme. 18 U.S.C. § 1341. The indictment described one broad or overall scheme to defraud, which was "to fraudulently obtain investments in oil and gas leases in Kansas and Oklahoma by means of the United States mails while using incomplete, improper and false information as the basis for obtaining such investments." I R. doc. 1 at 2. Each individual count at issue on this remand incorporated the paragraphs describing the overall scheme by reference, and then stated that on a specific date defendant and Muira Petroleum, Inc. "for the purpose of executing and attempting to execute the aforesaid scheme to defraud, knowingly caused to be delivered by mail according to the direction thereon a letter addressed to [defendant] Louis McAlpine" in violation of 18 U.S.C. §§ 2 and 1341. Id. at 8 (count 6), 10 (count 9), 13 (count 15) and 17 (count 23). The indictment listed each count under certain categories or projects: counts 1 to 5 were under "General Mailings;" counts 6 to 8 under "Mailings Regarding Birdie # 2;" counts 9 to 14 under "Mailings Regarding Oklahoma City Production;" counts 15 to 18 under "Mailings Regarding Simms-Jackson;" counts 19 to 22 under "Mailings Regarding S.W. Wewoka (Jewell # 1 and # 2);" and counts 23 to 26 under "Mailings Regarding Brogden." Id. at 5-19.
 
 
 5
 Defendant pleaded guilty to eight counts, and in its initial sentencing order the district court ordered him to pay $1,403,451 in restitution. In vacating the restitution order on the first appeal, we stated that "it is unclear whether the individual figures underlying the total amount of restitution actually represent loss suffered by the victims or merely the amount they invested in the schemes." McAlpine, 32 F.3d at 490. We remanded the case for the district court to make specific findings regarding the amount of loss suffered by the victims. Id. at 491.
 
 
 6
 On remand, the district court determined the amount of restitution based on victims/investors' reported losses on their tax returns. Relying on this method, the court ordered defendant to pay a total of $798,056 in restitution on four counts for which victims had provided proof of loss: count 6 (Birdie # 2), count 9 (Oklahoma City Production), count 15 (Simms-Jackson), and count 23 (Brogden). I R. tab 95 at 8. The amount of restitution for each count is the total amount of losses the court could substantiate for each project of which that count was a part; it was not limited to the amount associated with the particular mailing identified in each count. Defendant asserts that the mailing identified in count 6, for example, is a letter from investor Ralph Holt, Jr. to defendant in which Holt enclosed a check for $86,997.40 for purchase of an interest in Birdie # 2. The district court ordered restitution of $222,018 for count 6, which was the amount of losses incurred by five Birdie # 2 investors including Holt.
 
 
 7
 Defendant's first contention of error is that by basing its restitution order on a project basis rather than the particular mailing identified in the count of conviction, the district court ordered him to pay restitution related to counts of which he was not convicted, in violation of Hughey v. United States, 495 U.S. 411 (1990), and United States v. Wainwright, 938 F.2d 1096 (10th Cir.1991). This is a challenge to the legality of defendant's sentence, and is an issue we review de novo. Guthrie, 64 F.3d at 1514.
 
 
 8
 In Hughey, the Court held that the "language and structure of the [VWPA] make plain Congress' intent to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." 495 U.S. at 413. The circuits have split on application of Hughey in mail fraud cases because, as in this case, the specific offenses of conviction involving particular mailings incorporate by reference the overall scheme to defraud. Some circuits hold that because a mail (or wire) fraud conviction requires proof of the overall fraudulent scheme, the "specific conduct" under Hughey includes losses resulting from the overall scheme. See United States v. Manzer, 69 F.3d 222, 229-30 (8th Cir.1995); United States v. Stouffer, 986 F.2d 916, 928-29 (5th Cir.), cert. denied, 510 U.S. 837, 919 (1993); United States v. Turino, 978 F.2d 315, 317-19 (7th Cir.1992), cert. denied, 508 U.S. 975 (1993). Other circuits hold that the "specific conduct" is only the particular use of the mails described in the offense of conviction and that "[a]cts other than the particular mailing described in a count of conviction, even when committed during the course of or in furtherance of the same fraudulent scheme, do not state independent 'offenses of conviction.' " United States v. Jewitt, 978 F.2d 248, 251-52 (6th Cir.1992); accord United States v. Cronin, 990 F.2d 663, 666 (1st Cir.1993); United States v. Seligsohn, 981 F.2d 1418, 1421 (3d Cir.1992); United States v. Stone, 948 F.2d 700, 703-04 (11th Cir.1991); United States v. Sharp, 941 F.2d 811, 814-15 (9th Cir.1991). Defendant contends that this circuit adopted the latter, narrower view in Wainwright, 938 F.2d at 1097-98, and that the district court erred by ordering restitution under the broader view.[1]
 
 
 9
 The defendants in Wainwright were charged with bank fraud, in violation of 18 U.S.C. §§ 2 and 1344,
 
 
 10
 in a seven-count indictment accusing the two of "devis[ing] and intend[ing] to devise a scheme or artifice to obtain monies, funds, or credits owned by and under the custody and control of" six different banks.... The indictment charged that the defendants accomplished their scheme by "obtain[ing] stolen or worthless checks, forg[ing] signatures thereon, and cash[ing] or split deposit[ing] the checks by using false or fraudulent identification cards or documents." ...
 
 
 11
 On July 9, 1990, Wainwright entered a plea of guilty to Count 7 of the indictment, which alleged that he and Moore "executed and attempted to execute" a scheme to defraud the Mid-American Bank....
 
 
 12
 938 F.2d at 1097. Count 7 covered only the scheme to defraud Mid-American Bank. Id. n. 1. The district court ordered restitution for one-half the losses suffered by all the banks named in the indictment, including the six dismissed counts. Id. at 1097. Citing Hughey, and noting that it overruled this circuit's prior position, id. at 1098 n. 3, the court held, under a plain error standard, that the defendant could only be ordered to pay restitution for the loss suffered by Mid-American Bank because the other losses stemmed from "conduct unrelated to the offense of conviction." Id. at 1098. "Wainwright pleaded guilty only to the charge that he defrauded Mid-American Bank. Thus, we must direct that the court's restitution order be vacated insofar as it does not apply to Count 7." Id.
 
 
 13
 It appears that other circuits have interpreted Wainwright to support the narrow view by reading the partial quotations of the indictment to indicate that there was some overall scheme to defraud the six banks and count 7 simply charged that scheme with respect to Mid-American Bank. See United States v. DeSalvo, 41 F.3d 505, 514-15 (9th Cir.1994); Cronin, 990 F.2d at 666; United States v. Bane, 73 F.3d 358, 1995 WL 761099 at ---2 (4th Cir. Dec. 7, 1995) (unpublished). We believe, however, that Wainwright pleaded guilty to fraud only of the Mid-American Bank, 938 F.2d at 1098; in other words, count 7 was a stand-alone count. Wainwright is distinguishable from the instant case. As we read Wainwright it would allow an award of restitution for all losses the MidAmerican Bank suffered as a result of the scheme charged. Wainwright does not limit restitution to the amount involved in the single mailing in this mail fraud case in which the scheme charged is broader.
 
 
 14
 In the instant case counts 6, 9, 15 and 23 recite a mailing on a particular date, but the counts do not identify the offenses as defrauding a particular person. Each count recites that defendant caused a letter addressed to him to be delivered by mail, without specifying a victim. Each count appears to charge a scheme relating to a particular well drilling project and to recite the mailing as an element of the crime. The author of the letter is not identified in any of these counts, and the only way we know count 6, for example, involves a letter from Ralph Holt, Jr. is from defendant's submission of suggested findings of fact based on documents the government provided. See I R. doc. 92 at 1 & Ex. D; III R. Supp. doc. 73 at 28. This wording of the counts is unusual, as both counsel and the court admitted.[2] Indeed, had defendant not pleaded guilty he might have successfully challenged the indictment as duplicitous and as improperly charging multiple conspiracies. His guilty plea, however, foreclosed that argument. See Broce v. United States, 488 U.S. 563, 569 (1989).
 
 
 15
 Under the circumstances, we agree with the district court that it properly awarded restitution to those investors in the Birdie # 2, Oklahoma City Production, Simms-Jackson and Brogden projects who provided proof of their losses.
 
 II
 
 16
 Defendant's second argument is that the district court failed to reduce the amount of restitution by the value of equipment removed from the Brogden property and the remaining value of the Oklahoma City property. This is a question of fact we review for clear error. See Guthrie, 64 F.3d at 1514. In determining the amount of restitution, a court must account for any benefit received by the victim. Id. at 1516; 18 U.S.C. § 3663(b)(1)(B) (when property cannot be returned, restitution amount limited to value of property "less the value ... of any part of the property that is returned"). The district court did reduce the total amount of loss for sentencing purposes by the value of equipment ($270,000) removed from the Brogden property and by the value remaining in the Oklahoma City property ($500,000). McAlpine, 832 F.Supp. at 1438. In its restitution order on remand, however, the court did not reduce the restitution amounts for any "value returned" related to these two properties.
 
 
 17
 In the district court, defendant contended that the restitution amount should be reduced by the value of the Brogden equipment allocable to victims Ann Copeland and Ralph Holt, Jr. and by the remaining value of the Oklahoma City property allocable to victim William James. The district court found that although both Copeland and James had been identified as victims in the presentence report, no restitution was ordered payable to either of them and therefore no reduction in the restitution amount was warranted regardless of whether they received any value from these properties. In finding that the amount of restitution ordered for Holt for the Brogden property should not be reduced for the value of the equipment, the district court relied on Holt's uncontroverted testimony that he did not receive any money from the sale of this equipment.
 
 
 18
 On appeal, defendant repeats his contention that the restitution amount should be reduced by the benefits received by Copeland, James and Holt, but provides no reasons why the district court's findings are wrong. In addition, defendant argues that the court did not make sufficient findings on the issue of remaining property value. We see no error. Obviously, there is no reason to reduce the restitution amount for alleged benefits received by victims to whom no restitution was awarded. Defendant provides no reason for concluding that the court's reliance on Holt's testimony was clearly erroneous, nor has he otherwise demonstrated that the court's findings regarding remaining property are insufficient.[3]
 
 
 19
 Defendant also seems to challenge the district court's reliance on what he refers to as victims' "unsigned, unverified photocopies of what appear to be Schedule C tax schedules" to prove the amount of victims' losses. Brief of Appellant at 8. Defendant did not raise this argument in the district court, and this evidentiary matter does not constitute plain error. See United States v. Saucedo, 950 F.2d 1508, 1511, 1518 (10th Cir.1991). Moreover, the court's reliance on reported tax losses would appear to eliminate any concern about the remaining value in or other benefits the victims may have received from the properties, absent any indication that the tax schedules were inaccurately or fraudulently prepared. The tax schedules in question reflect income as well as losses for the properties, and we assume the schedules would reflect income from the sale of equipment. By definition, the remaining value of an investment would not be shown as a tax loss.
 
 III
 
 20
 Defendant's final argument is that the district court failed to make factual findings regarding his ability to satisfy the restitution order. At the outset, we disagree with his contention that our remand order directed the court to make these findings. The remand order directed the court "to make specific factual findings consistent with this opinion in recomputing the restitution amount," McAlpine, 32 F.3d at 491, and defendant did not even raise this issue on his first appeal, see id. at 487 (listing issues raised). Indeed, specific factual findings regarding ability to repay are not required in this circuit unless there is substantial ambiguity as to whether the court considered the statutory factors required under 18 U.S.C. § 3664(a) and (d). See United States v. Kunzman, 54 F.3d 1522, 1532-33 (10th Cir.1995); United States v. Rogat, 924 F.2d 983, 986 (10th Cir.), cert. denied, 499 U.S. 982 (1991).
 
 
 21
 We conclude that it is clear the court adequately considered defendant's repayment ability and did not abuse its discretion in ordering restitution. The court relied primarily on the facts that defendant has never accounted for the millions of dollars invested in his fraudulent schemes and that defendant's father-who, as president and debtor-in-possession of defendant's company, attempted to account for the funds--testified that defendant still may have a considerable amount of money from the investments, possibly secreted in foreign bank accounts.
 
 
 22
 AFFIRMED.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 [1]
 Congress amended the VWPA effective November 29, 1990, to broaden the definition of "victim" and effectively overrule Hughey in part, thereby negating the limitation on restitution imposed by the narrow view. See United States v. Reed, 80 F.3d 1419, 1423 (9th Cir.) ("[T]he 1990 amendment was intended to overrule Hughey as interpreted by cases such as ... Sharp ...."), cert. denied, 117 S.Ct. 211 (1996); United States v. Gilberg, 75 F.3d 15, 20 (1st Cir.1996). Under the 1990 amendment, codified at 18 U.S.C. § 3663(a)(2), the VWPA now provides that "[f]or purposes of restitution, a victim of an offense that involves as an element a scheme, a conspiracy, or a pattern of criminal activity means any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." Under this section, a defendant can be ordered to pay restitution relating to the overall scheme to defraud included in a mail fraud conviction. See, e.g., United States v. Hensley, 91 F.3d 274, 277 (1st Cir.1996); cf. United States v. Sapp, 53 F.3d 1100, 1105 (10th Cir.1995) (interpreting 18 U.S.C. § 1344(2), executing schemes or artifices to commit bank fraud), cert. denied, 116 S.Ct. 796 (1996). Under § 3663(a)(2), the district court's restitution order would clearly be permissible. The crimes to which defendant pleaded guilty in the instant case, however, occurred before the 1990 amendment. Because of our disposition on other grounds we do not determine whether the amended version could be applied to defendant
 
 
 [2]
 At the hearing accepting defendant's guilty plea the following exchange occurred:
 MR. THOMPSON [government counsel]: Without interfering. The way we structured this indictment may not be the best way. The individual counts are simply specific mailings which in and of--we believe and I think the Court and counsel would agree, in and of themselves are not necessarily misrepresentations or fraudulent standing alone, but rather are mailings used in furtherance of the general scheme and of course Your Honor is well familiar with that; but the specific letter that is referenced in each count does not necessarily just as itself, of course, give rise to the crime--
 MR. DOSH [defense counsel]: And I would agree with that, Your Honor. It's kind of hard to break this down.
 THE COURT: Well, your suggestions are well taken.
 III R. Supp. doc. 73 at 30.
 
 
 [3]
 Defendant does not contend that the amount of restitution ordered to other victims for the Brogden and Oklahoma City properties should be reduced for "benefits" received by these victims, nor does he demonstrate how any such benefits would be allocated among these victims