**UNITED STATES of America,**
**Plaintiff,**

v.

**Kirk Irving KOSKELLA, Defendant.**

**No. 2:00 CR 594 JTG.**

United States District Court,
D. Utah,
Central Division.

Dec. 15, 2003.

Stewart C. Walz, Jennifer C. Smith, U.S. Attorneys, Washington, DC, for Plaintiff.

Stephen R McCaughey, Earl G Xaiz, Yengich, Rich & Xaiz, Salt Lake City, UT, Douglas C. McNabb, Houston, TX, for defendant.

Kirk Irving Koskella, Emmett, ID, pro se.

## ORDER Denying Defendant's Motion to Withdraw Guilty Plea

J. THOMAS GREENE, District Judge.

This matter comes before the Court on Defendant's Motion to Withdraw his Plea of Guilty.

### STATUS OF THE CASE

This case has to do with a government prosecution against Kirk Irving Koskella for conspiracy and wire fraud involving tax loss to the Internal Revenue Service of between $1.5 million and $2.5 million, and loss to individuals who placed money with Koskella and others in an investment program of between $10 million and $20 million. The case involves sophisticated concealment with Koskella as an alleged organizer and leader of the criminal activity. Pre-charge plea negotiations between the government and Koskella occurred over a period of almost one year before Koskella was charged in a Felony Information. At or about that time, persons other than Koskella were indicted by a federal Grand Jury and the Court has been advised that two fully prepared cases against them are pending in the District of Utah and trial dates have been set. Defendant Koskella agreed to testify on behalf of the government against the defendants in the other cases as part of a plea bargain contained in a Plea and Cooperation Agreement which was presented to this Court in connection with his pleas of guilty entered December 2000 to the

charges against him. After entry of his guilty plea, there has been substantial delay in sentencing occasioned by several continuances anticipating further bargained for cooperation by Koskella, fundamental breakdown of the attorney-client relationship between Koskella and his former legal counsel, pro se filings by defendant almost two years after his pleas of guilty were entered, including a Motion to Withdraw Plea of Guilty, and a mental competency and psychological examination of defendant at the Metropolitan Detention Center in Los Angeles. A report concerning those examinations was finally completed in September 2003 and a full hearing on the defendant's revised Motion to Withdraw Guilty Plea was conducted in October 2003, after which the matter was taken under advisement and submitted for decision.

### PROCEDURAL HISTORY

On August 28, 2002, a Status Conference was requested by the Government to provide the Court with a report on possible violation of the plea agreement by Defendant. On September 4, 2002, defendant responded (unbeknownst to his attorney) by filing two "pro se" motions: (1) Notice to the Court: Abandonment By Counsel, Failure to Defend, Proceeding in Forma Pauperus; and (2) Notice to Withdraw Plea Agreement. The Court established a date for Koskella's lawyer—Douglas C. McNabb of Houston, Texas—and the government to respond. The government responded with an Initial Memorandum in Opposition, and Koskella's defense counsel moved to withdraw as counsel in light of statements made in defendant's motions of September 4, 2002. A further status and scheduling conference and other proceedings were held in October 2002, after which defendant's pro se motion entitled Notice to the Court: Abandonment By Counsel, Failure to Defend, Proceeding in Forma Pauperus was referred to Magistrate–Judge Alba. Stephen McCaughey of Salt Lake City, Utah was appointed as new counsel for defendant and time was granted to review the many files and records of this case and to confer with Koskella.

On February 7, 2003, defendant filed a Motion for Mental Competency Examination. As a result, a hearing was conducted on February 11, 2003 to consider all pending matters. At that time, the Court granted defendant's Motion for Mental Competency Examination and vacated the hearing on defendant's Motion to Withdraw Guilty Plea which had been set for February 13, 2003. Thereafter, defendant was ordered to report to the Los Angeles Detention Center for a full mental competency and psychological evaluation. After substantial tests and procedures were conducted, requiring extensions of time, a report entitled Forensic Evaluation, dated September 2, 2003, and a letter from Warden Benov of the Los Angeles Detention Center, dated September 5, 2003, were received. A Status and Scheduling Conference was then held on September 18, 2003 to set a new date for defendant's Motion to Withdraw Plea Agreement.

A hearing on defendant's revised Motion to Withdraw Plea Agreement, prepared and filed by his new attorney, was held on October 16, 2003. Defendant Kirk I. Koskella testified on his own behalf, and the government presented the testimony of defendant's former attorney Douglas McNabb, as well as special agents Jerome McDermott and Michael Anderson. The following exhibits were introduced into evidence at the hearing: (1) Proffer Agreement between the government and Koskella, dated and signed November 14, 2000; (2) Letter from Koskella to McNabb, dated January 8, 2001; (3) Statement in Advance of Plea, dated and signed December 12, 2000; (4) Plea and Cooperation Agreement, dated and signed December 12,

2000; (5) FBI Form 302, memorandum of conversations on November 14, 2000; (6) Affidavit of Jennifer Smith, dated October 9, 2002; (7) Motion for Status Report and Scheduling Conference by the government, dated August 28, 2002; and (8) Forensic Evaluation Report, dated September 2, 2003, and Letter by Warden Benov, dated September 5, 2003. In addition, the transcript dated December 12, 2000, of defendant's change of plea hearing was included in the record, as was the transcript, dated October 16, 2003, of the hearing on defendant's *motion to withdraw guilty plea.*

After the time elapsed for completion of the transcription by the court reporter and review by counsel of the October 16, 2003 hearing, and no submissions of post hearing memoranda or requests for further oral argument were received, the matter was taken under advisement and submitted for decision.

### ANALYSIS

Rule 11(d) of the Federal Rules of Criminal Procedure provides:

A defendant may withdraw a plea of guilty or nolo contendere: (1) before the court accepts the plea, for any reason or no reason; or *(2) after the court accepts the plea, but before it imposes sentence if:* (A) the court rejects a plea agreement under Rule 11(c)(5); or *(B) the defendant can show a fair and just reason for requesting the withdrawal.*

(emphasis added).

■ In *U.S. v. Hickok,* the Tenth Circuit stated, " '[o]ne who enters a guilty plea has no right to withdraw it,' and the defendant bears the burden of demonstrating 'a fair and just reason' for withdrawal

of his guilty plea." 907 F.2d 983, 985 (10th Cir.1990) *quoting Barker v. United States,* 579 F.2d 1219, 1223 (10th Cir.1978) (additional citations omitted).[1] In *U.S. v. Hancock,* 607 F.2d 337, 337 (10th Cir.1979), the Tenth Circuit ruled that "although a criminal defendant does not have an absolute right to withdraw a plea of guilty, a request to withdraw such a plea made before imposition of sentence should be considered carefully and with liberality." The court went on to hold, however, that the denial or granting of permission to withdraw a guilty plea is within the sound discretion of the district court. In *United States v. Gordon,* 4 F.3d 1567, 1572–73 (10th Cir.1993), the Tenth Circuit further clarified the standard for review, stating "we review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion, and we will not reverse unless the defendant can show that the court acted unjustly or unfairly."

■ Whether a defendant has met his burden of a "fair and just reason" turns on the application of seven factors laid out by the Tenth Circuit as follows: (1) whether the defendant has asserted his innocence; (2) whether the government will be prejudiced if the motion is granted; (3) whether the defendant has delayed in filing the motion; (4) the inconvenience to the court if the motion is granted; (5) the quality of the defendant's assistance of counsel; (6) whether the plea was knowing and voluntary; and (7) whether the granting of the motion would cause a waste of judicial resources. *United States v. Siedlik,* 231 F.3d 744, 749 (10th Cir.2000); *see also United States v. Gordon,* 4 F.3d 1567, (10th Cir.1993) and *United States v. Guthrie,* 64 F.3d 1510 (10th Cir.1995).[2]

---

1. In *U.S. v. Siedlik,* 231 F.3d 744, 746 (10th Cir.2000), the Tenth Circuit again stressed that "[u]nder [Rule 11(d)], *the burden is on the defendant to establish a "fair and just reason" for the withdrawal of the plea."* (emphasis added).

2. In *United States v. Carr,* 740 F.2d 339, 344 (5th Cir.1984), *cert. denied* 471 U.S. 1004, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985), the Fifth Circuit stated that a court should apply the seven factors under the totality of the circumstances. In analyzing the totality of the cir-

In applying the stated factors to the facts of any case in which a defendant seeks to withdraw a guilty plea, comparison between the *Hancock* and *Siedlik* cases is instructive. In *Hancock*, the Tenth Circuit found that under the applicable standards for the exercise of discretion, the district court abused its discretion because it did not hold a hearing to allow the defendant an adequate opportunity to develop support for his reasons for wanting to change his plea. *Hancock*, 607 F.2d 337–338. In addition, the district court failed to outline its reasons for denying the motion; the government did not claim or demonstrate that it would be prejudiced in any way by the defendant changing his plea; and the court noted that this was not a case where the defendant's motivation was found to be manipulation of the legal system. *Id.* at 338. In *Siedlik*, however, the Tenth Circuit found that the factors weighed against the granting of the defendant's motion to withdraw his guilty plea. *First*, the court noted that the defendant specifically stated that he was guilty and provided detailed accounts of his crimes both in the plea agreement and at his change of plea hearing. *Second*, the court found that the withdrawal likely would prejudice the government by forcing it to undergo much of the same process it already had completed. *Third*, the defendant did not file a motion with the district court to withdraw his plea, but raised the issue for the first time at defense counsel's motion to withdraw as counsel, which was filed only two days before the sentencing hearing and nearly seven months after defendant pled guilty. The court noted that the reasons for the delay were not clear from the record, but that it could not disagree with the district court when it suspected that "any concerns the defen-

dant may have with . . . his entry of plea in this case may be more related to change of heart in light of developments of the sentence rather than for any substantive reason that is cognizable at law." *Siedlik*, 231 F.3d at 749–50. *Fourth*, the district court would be substantially inconvenienced by multiplying proceedings after a knowing and voluntary plea of guilty had been entered. *Fifth*, the defendant was assisted by counsel throughout the plea negotiations that the district court characterized as "skilled and respected." The defendant also testified that he was fully satisfied with his legal representation. *Sixth*, the district court had found after thoroughly questioning the defendant at the change of plea hearing that his plea was entered knowingly and voluntarily. *Seventh*, the court found that "[w]hen you unnecessarily multiply judicial proceedings to retrace matters that were inquired into exhaustively, that is certainly within the ambit of the waste of judicial resources." *Id.*

The fact situation discussed in *Siedlik* parallels the fact situation in the *Koskella* case now under consideration.

### "FAIR AND JUST REASON" IN THE CASE AT BAR

█ In the case at bar, application of the seven factors reveals no proper basis for withdrawal of Koskella's plea of guilty.

1. *Whether the defendant has asserted his innocence.*

Defendant appeared before this Court on December 12, 2000 to enter a plea of guilty. The defendant indicated he understood what he was doing; that he was acting voluntarily and of his own free will; that he was on medication for nervousness (Salexa), but he had a clear mind and the

cumstances, the court noted in connection with guideline (3) that "the longer the defendant delays in filing a withdrawal motion, the

more substantial reason he must proffer in support of his motion." *Id.*

medication did not effect his ability to think; and that no pressure was brought upon him or promises made which caused him to plead guilty to the Felony Information other than those contained in the plea agreement. (Change of Plea ("COP") Tr. 5:6–8, 12–25; 6:1–11.) The defendant had previously discussed and executed a waiver of Grand Jury Indictment before Magistrate–Judge Alba. (COP Tr. 6:12–22.)

At the aforesaid change of plea hearing before this Court, the defendant stated that he understood that he would enter a plea to count one (conspiracy) and count two (wire fraud). (COP Tr. 6–7:23–6.) The defendant indicated that he had discussed the counts with his attorney. At that point, his attorney stated that they would waive the reading of the indictment because they had extensively negotiated the document with the government and the defendant had been "intricately involved" with that negotiation. (COP Tr. 7:13–15; 10:6–14.) The defendant then said that their negotiations in this matter with the government had been for almost a year prior to the charges being brought by the government. (COP Tr. 16:16–23.) However, the Court still reviewed the essential allegations made against the defendant, including the specific acts and schemes conducted by the defendant. (COP Tr. 7–16; 17–19.) The defendant affirmatively acknowledged the allegations and stated he had no questions as to his knowledge or understanding of the nature of the charges. (COP Tr. 16:12–15; 19:12–15.)

The Court found that the defendant was acting voluntarily and that he understood the nature of the charges, and that he intended to plea guilty to both counts. (COP Tr. 19:16–19.) The Court reviewed the defendant's constitutional rights with him, and the defendant indicated he desired to waive those rights in favor of entering a plea. (COP Tr. 19–20:19–16.) The Court asked the defendant: "why do you think you are guilty of all of these bad acts that are described?" (COP Tr. 29:16–17.), to which the defendant responded: "because I promoted, created and promoted a structure that attempted to evade taxes, that it helped people evade taxes and because I asked for people to send money in to, that was not being used on what it was originally told to them it would be used for." (COP Tr. 29:18–22.) The defendant also agreed that the recitation of proof by the prosecutor, outlining evidence that would be offered against him if a trial was to be conducted by the government, was true and correct. (COP Tr. 31:15–17.) The Court found a factual basis for the entry of a plea of guilty. (COP Tr. 31.) During the coarse of the hearing, defendant was extensively questioned by the Court as to his knowledge of the allegations and the defendant's desire to plead guilty. At no time during the proceedings did the defendant appear not to understand the proceedings or the plea agreement. In fact, the defendant answered the questions directly and with apparent knowledge concerning all aspects of the case. There was no assertion of innocence by defendant. To the contrary, he clearly and voluntarily acknowledged his guilt.

The Statement in Advance of Plea containing the plea agreement was accepted for filing. The Court noted that it had been signed by the defendant, his attorney, and the prosecutor. The defendant then plead guilty to count one and count two of the Felony Information. (COP Tr. 31:18–20; 32:23–24; 33:3,11–22.)

Prior to his plea of guilty, the defendant and his attorney McNabb met with Assistant United States Attorney Stewart Walz, Special Agents Jerome McDermott and Michael Anderson on November 14, 2000 at the United States Attorney's Office in Utah to make a proffer. *See* Exhibit 5. In said proffer, the defendant discussed his

involvement in an open and candid manner stating the level of his knowledge, involvement and control in the transactions that took place with the investments. *See* Exhibit 5 at 12–21. Such statements included an opening statement made by defendant where he stated he knew he did things unlawful and immoral. *See* Exhibit 5 at 1. In addition, numerous times during the proffer the defendant stated that many actions taken by Anglo American Investments (an entity essentially controlled by him) were done at his sole direction. *See* Exhibit 5 at 15, 17, 19, and 21. In this regard, defendant acknowledged that he knew "for sometime ... that the structure was not legal in that it did not keep clients' assets at arms length." Exhibit 5 at 13.

About one month after Koskella entered his plea of guilty, Koskella wrote to his attorney McNabb professing innocence and ways to justify filing a motion to withdraw plea. Thereafter, he did nothing to advise the court of his claim of innocence from the date of his letter to McNabb in January 2001 (*see* Exhibit 2) until September 2002 when he filed his pro se motions. *See* further discussion of Koskella's belated assertion of innocence at factor 3, *infra.*

Having reviewed the record submitted by the parties concerning whether defendant asserted innocence, the Court finds that Koskella clearly and voluntarily admitted his guilt. The Court further finds that the defendant has not established that he asserted his innocence in this matter to the Court in a timely or bona fide manner.

2. *Whether the government will be prejudiced if the motion is granted.*

The government stated to the Court that if the defendant were allowed to withdraw his plea it would seek to consolidate him in two other multiple count, multiple defendant indictments pending in this District, which cases are fully ready for trial and trial dates are set. It is apparent even from a cursory review of the extensive files of these related cases in this District that the government has spent enormous amounts of time in pretrial proceedings, including pretrial motions of all kinds. If the defendant were allowed to withdraw his plea at this time, and the government were to succeed in consolidating the defendant's case with the other cases, the government may be placed back at square one with these other cases that have been ongoing since 2001 and are now ready for trial.

If defendant Koskella were now permitted in the case at bar to go to trial, forcing the government to marshal and present the mountain of evidence against him, prejudice to the government in the prosecution of Koskella in this case is both obvious and manifest.

The Court finds that the government would be prejudiced if defendant's motion was granted, not only in this case but also potentially in the two other related cases.

3. *Whether the defendant has delayed in filing the motion.*

A significant delay in filing a motion to withdraw a plea may be more related to a defendant's change of heart in light of developments of the sentence rather than for any substantive reason. *Siedlik,* 231 F.3d at 749–50. In *U.S. v. Kramer,* 168 F.3d 1196, 1202 (10th Cir.1999), the Tenth Circuit reasoned that a delay in filing a motion to withdraw a guilty plea weighed against the defendant where defendant filed the motion one day before sentencing and nearly three months after he pled guilty.

On August 28, 2002, a Status Conference was requested by the Government to provide the Court with a status report on possible violation of the plea agreement by Defendant. No doubt in direct response and in an apparent attempt to gain more

time, on September 4, 2002, the defendant filed pro se motions for withdrawal of counsel and withdrawal of the guilty plea. However, at no time prior to September 4, *2002* did the defendant inform the Court of a desire to withdraw his plea or assert his innocence.

Defendant asserts that he attempted to withdraw his plea soon after he entered his change of plea. In support of this argument defendant states that he sent attorney McNabb a letter, dated January 8, 2001, discussing his dissatisfaction with his plea and his desire to withdraw his guilty plea. In this connection, at the hearing on October 16, 2003 on defendant's motion to withdraw his plea the Court heard testimony from both the defendant and McNabb regarding the January 8, 2001 letter from defendant to McNabb asking for a guarantee of a 5K motion and no incarceration or a withdrawal of plea. (Motion to Withdraw Plea Hearing ("Hrg") Tr. 30:20–25; 66:18–22.) *See* Exhibit 2. McNabb testified that he took the letter very seriously and he immediately flew to Salt Lake City and met with defendant at the airport. (Hrg Tr. 67:1–25.) McNabb testified that "[t]he bottom line was that Mr. Koskella didn't want to go to jail." (Hrg Tr. 69:4–5.) McNabb testified that at this meeting he reiterated to defendant what their strategy was and told defendant that he certainly could file a petition to withdraw, but that he did not have an absolute right to withdraw his plea, and that bad things could result if the court denied the petition. (Hrg Tr. 68:11–25; 69:1–4.) McNabb testified that by the end of the meeting the defendant wanted to pursue the original strategy of getting the lowest possible sentence through cooperation and other potential sentencing motions. (Hrg Tr. 72:9–17.) McNabb testified that the subject of withdrawing the defendant's plea did not come up again until May of 2002 when the AUSA Walz expressed concern that the defendant was involved in

other illegal conduct. (Hrg Tr. 72–73:18–15.)

Defendant's only reason offered for his delay in filing for withdrawal of his plea is that he was allegedly told by his attorney that he could not withdraw his plea. However, for many months he continued cooperation with the government after he sent the January 8, 2001 letter to his attorney. (Hrg Tr. 35–38.) McNabb testified that it was their intent to continue to cooperate with the government, which they did until May of 2002 when the attorney client relationship broke down. (Hrg Tr. 72–75, 77–78.) Even then the defendant did not file his pro se motions until *September 4, 2002.*

Having reviewed the record submitted by the parties concerning whether the defendant has delayed in filing the motion, the Court finds that the defendant very substantially delayed in filing any motion for withdrawal of plea. The defendant filed his first notice to the Court on September 4, 2002, almost two years after he entered his plea on December 12, 2000. It is apparent to the Court from the record that the defendant's early request to his attorney was abandoned and satisfied by the defense strategy to obtain the best possible plea deal. The Court also finds that the defendant's request to his attorney in May of 2002 to withdraw his plea, as well as his pro se motion to withdraw his plea filed in September of 2002, were nothing more than a change of heart in light of the likelihood of a prison sentence rather than for any substantive reason.

4. *The inconvenience to the court if the motion is granted.*

The Tenth Circuit has stated that "the court would be substantially inconvenienced by the multiplying proceedings after a knowing and voluntary plea of guilty has been entered." *U.S. v. Siedlik,* 231 F.3d 744, 750 (10th Cir.2000).

The inconvenience to the court would be two fold. One, inconvenience to this Court for the ongoing saga that the defendant created in an attempt to manipulate the system. The Court has spent a great amount of time and resources and is prepared to move forward with sentencing. Second, it appears to the Court that the other pending cases in this District would be considerably set back if Koskella were to be added as a defendant in those cases. Those cases have been pending for years, and the government, the other defendants and the courts involved in those other cases are now currently ready for trial. It appears that these pending cases may have to start back at square one and the involved courts may be constrained to hear the same matters raised by this defendant that have already been heard, briefed, and ruled upon by this Court. Also, motions decided in the other cases may require further foundation and may have to be reargued as such may apply to this defendant. This Court expresses no opinion as to the merits of a possible motion to consolidate, not having heard the reasons such a motion might be urged. Such a motion is entirely speculative, however, because presumably it would only be filed if the court were to grant Koskella's motion to Withdraw his guilty plea in this case.

Having reviewed the record and the extensive files in this case, this Court finds that it would be inconvenient for this Court to allow the defendant to withdraw his plea of guilty because of the considerable time, effort and judicial resources already expended.

5. *The quality of the defendant's assistance of counsel.*

It is very clear that counsel McNabb was very effective in representing defendant. At the Change of Plea hearing on December 12, 2000, defendant stated under oath that he was satisfied with his counsel. (COP Tr. 7:19–20.) Defendant

and his counsel negotiated a plea agreement whereby the defendant plead only to two counts, whereas the other defendants in the other cases that are related to the same acts, face two separate Indictments containing more than 64 separate counts. The defendant was allowed to remain free on his own recognizance with little restrictions. The defendant was allowed to relocate outside the District of Utah—to Idaho, and to set up a business to support his family. Finally, the defendant was allowed to delay his sentencing by cooperating with the government for over two years. All of the foregoing was testified to by McNabb as part of the defense strategy. (Hrg Tr. 68–71.)

Prior to September 4, 2002, the defendant had made no allegation or statement to this Court of dissatisfaction with his attorney. The defendant provided two letters that were sent to his attorney expressing unhappiness; however, given the extensive course of cooperation provided by the defendant with the help and assistance of his attorney McNabb, it appears that those differences were discussed with his attorney and resolved. In any event, such claimed dissatisfaction was withheld from the court and not intimated until September 4, 2002.

Finally, the defendant's dissatisfaction with his attorney appears to have developed only as a result of the likelihood that he would face some term of incarceration. When defendant's attorney would not file a motion to withdraw his plea at the end of May 2002, the defendant revolted. However, the record supports the testimony of McNabb that the defense strategy was being followed successfully. Any reservation the Court may have on this factor is curtailed by the latitude and concessions during defendant's pre-sentence release that were arranged by his attorney and agreed upon by the government.

Having reviewed the record, the Court finds that the defendant received effective quality representation as required under the law.

### 6. *Whether the plea was knowing and voluntary.*

Defendant appeared before this Court on December 12, 2000 to enter a plea of guilty. The defendant indicated he understood what he was doing before the court; he was acting voluntarily and of his own free will; he was on a medication for nervousness (Salexa), but he had a clear mind and the medication did not effect his ability to think; and that no pressure was brought upon him or promises made, other than those contained in the plea agreement, to plead guilty to the Felony Information. (COP Tr. 5:6–8, 12–25; 6:1–11). The defendant indicated that he understood that he would enter a plea to count one (conspiracy) and count two (wire fraud). (COP Tr. 6–7:23–6.) The defendant indicated that he discussed the counts with his attorney, and indicated they had extensively negotiated the document with the government. It was manifest that the defendant had been "intricately involved" in the negotiations. (COP Tr. 7:13–15; 10:6–14.) The defendant affirmatively acknowledged the allegations and stated he had no questions as to his knowledge or understanding of the nature of the charges. (COP Tr. 16:12–15; 19:12–15) The Court found that the defendant was acting voluntarily and that he understood the nature of the charges, and he intended to plea guilty to both counts. (COP Tr. 19:16–19) In addition, defendant's former counsel, McNabb, testified that defendant voluntarily entered his plea of guilty with full knowledge and understanding of the plea agreement and the cooperation agreement. (Hrg Tr. 65:1–21.)

Defendant alleges that he did not enter a voluntary plea because he was on medication and was told not to divulge his mental condition to the judge during his change of plea. (Hrg Tr. 16–17) However, these allegations are controverted by all other evidence on the record. Defendant did in fact inform the Court that he was on medication, although he stated it was Salexa, not Zoloft as he now claims. (*Compare* COP Tr. 5:18–19 *with* Hrg Tr. 14:13–18.) Defendant testified that his mind was clear and that the medication did not cause him any problems in that regard. (COP Tr. 5:15–25.) Moreover, all individuals alleged by defendant to be present at the time he was allegedly told by his attorney McNabb not to divulge his mental condition testified that no such statement was made or that no such conversation occurred. *See* Court Exhibit 1 (Hrg Tr. 64:20–22; 91:2–19; 102:2–19.)

Finally, the Forensic Evaluation submitted in September of 2003 after many tests and much review and analysis supports a finding that the defendant acted knowingly and voluntarily. Although the report does not directly evaluate his mental state at the time of plea, it does offer good insight into his overall ongoing mental state and personality. The report states that the defendant provided contradicting and misleading information, and that he possibly gives exaggerated and misrepresented symptoms. *See* Forensic Evaluation Report 12. The report is very clear that the defendant does not currently suffer from any mental disorder that would prevent him from assisting and participating in his defense. *See* Report 13.

Having reviewed the record submitted by the parties concerning whether the plea was knowingly and voluntarily entered into by the defendant, the Court finds that the defendant did knowingly and voluntarily enter a plea of guilty on December 12, 2000.

7. *Whether the granting of the motion would cause a waste of judicial resources.*

"When you unnecessarily multiply judicial proceedings to retrace matters that were inquired into exhaustively, that is certainly within the ambit of the waste of judicial resources." *U.S. v. Siedlik,* 231 F.3d 744, 750 (10th Cir.2000). This statement by the Tenth Circuit has application to this case because it is manifest and clear that very substantial duplicative proceedings would be required if defendant's plea were to be withdrawn, which would render useless the considerable time, effort and expenditure of judicial resources thus far rendered.

In addition, withdrawal of Koskella's plea of guilty could adversely affect two other long time pending cases in this District, particularly if this defendant were to be added as a defendant in those cases.

In *U.S. v. Hancock,* 607 F.2d 337, 338 (10th Cir.1979), the court allowed the withdrawal of plea, but specifically noted that it did not have a case where the defendant's motivation was found to be a manipulation of the legal system. In the case at bar, the defendant appears to have made every attempt to manipulate the system to avoid incarceration. The Forensic Evaluation and the responses by defendant's former counsel McNabb bear out that this defendant is manipulative and self-serving in his efforts to gain the desired objective of no incarceration. Unlike the situation presented in *Hancock,* this Court finds that defendant Koskella has manipulated and is attempting further manipulation of the legal system.

Having reviewed the record, the Court finds that the granting of the defendant's motion to withdraw his plea would cause a waste of judicial resources.

Based upon the aforementioned factual and legal discussion, this Court finds that the defendant Koskella has failed to carry the burden of showing a fair and just reason for withdrawal of his plea of guilty. Accordingly, under the totality of all facts and circumstances presented, it is hereby

**ORDERED**, that defendant's Motion to Withdraw Guilty Plea is DENIED; it is

**FURTHER ORDERED**, that sentencing in this case is set for the 9th day of March, 2004, at 10:00 a.m.